UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC.,

                              Plaintiff,

    - *against* -

HILTON HOTELS CORPORATION N/K/A
HILTON WORLDWIDE, ROSS KLEIN AND
AMAR LALVANI,

                             Defendants.

    -and-

UNITED STATES OF AMERICA,

                             Intervenor.

09 Civ. 3862 (JSG) (ECF)

## CONSENT PERMANENT INJUNCTION

**THIS CAUSE** comes before the Court on the Joint Motion by Plaintiff STARWOOD HOTELS & RESORTS WORLDWIDE, INC. ("Starwood"), Defendant HILTON WORLDWIDE, INC. (f/k/a Hilton Hotels Corporation) ("Hilton"), Defendant ROSS KLEIN ("Klein") and Defendant AMAR LALVANI ("Lalvani") (together, the "Parties," and each individually a "Party"), setting forth that the Parties to this action have agreed on the bases for, and jointly request entry of, this Consent Permanent Injunction, and:

**WHEREAS,** on April 16, 2009, Starwood filed the above-captioned Civil Action in the United States District Court for the Southern District of New York (the "Starwood Action"), alleging, among other things, that Hilton, Klein and Lalvani improperly obtained documents and electronic information from Starwood (collectively, the "Starwood Information"),[1] including confidential and/or trade secret information, and, among other things, used Starwood Information, without Starwood's consent, in Hilton's business, including without limitation in the development of Hilton's Denizen Hotels Brand[2] and in the development and repositioning of Hilton Luxury & Lifestyle Brands,[3] and that such actions caused Starwood and its subsidiaries to have suffered damage to their goodwill and going concern value;

**WHEREAS,** on or about April 20, 2009, Hilton announced that it had received a grand jury subpoena from the United States Attorney's Office for the Southern District of New York requesting, among other things, documents relating to the Starwood Information, and the Parties understand that the grand jury investigation is ongoing (the "Grand Jury Investigation");

**WHEREAS,** on or about April 20, 2009, Hilton placed Klein, Lalvani and all other employees in its Luxury & Lifestyle Brands Group on administrative leave of absence;

**WHEREAS,** on or about April 21, 2009, Hilton announced that it had suspended all further development of the Denizen Hotels Brand;

---

[1] For purposes of this Order, "Starwood Information" means any hard copy document or electronic information originating at or belonging to Starwood or any copy or reproduction thereof. For the avoidance of doubt, "Starwood Information" excludes: (i) any document or electronic information that is in the public domain by reason other than wrongful actions of Hilton or any of its affiliates, Klein or Lalvani or anyone acting on behalf of any of them; (ii) any document or electronic information that Blackstone obtains in its capacity as owner of Starwood Brand Hotels (provided that Blackstone fully complies with any applicable terms and conditions of confidentiality and use thereof); (iii) any document or electronic information relating to a Starwood Brand Hotel that is provided to Hilton by an owner, franchisee or consultant in the ordinary course of business (provided that any applicable terms and conditions of confidentiality and use thereof are complied with); and (iv) any document or information containing Starwood Information that Klein or Lalvani obtain in the ordinary course of future employment by them (provided that such documents or information was properly obtained and any applicable terms and conditions of confidentiality and use thereof are complied with). "Starwood Brand Hotel" means Sheraton, Westin, Four Points by Sheraton, W Hotels, St. Regis, The Luxury Collection, Le Méridien, Element and Aloft hotels, and all other hotels owned, operated, franchised, leased, licensed or managed by Starwood or any of its subsidiaries, including without limitation residential projects and vacation resorts.

[2] For purposes of this Order, "Denizen Hotels Brand" means the hotel brand introduced by Hilton on or about March 10, 2009, and includes Project Global21 and any other predecessor name by which Denizen was referenced by Hilton.

[3] For purposes of this Order, "Hilton Luxury & Lifestyle Brands" means the Waldorf-Astoria Hotels & Resorts, Waldorf Astoria Collection, Conrad Hotels & Resorts, Denizen and any other luxury or lifestyle brand that is developed by or on behalf of Hilton now and in the future, including without limitation residential projects and vacation resorts.

**WHEREAS**, on April 23, 2009, the United States District Court for the Southern District of New York entered a Preliminary Injunction and Order on Consent of All Defendants in the Starwood Action (the "Preliminary Injunction"), *inter alia*, enjoining Hilton, Klein and Lalvani, and their respective officers, agents, servants, employees and in-house attorneys, and all other persons who are in active concert or participation with them (including without limitation designers, architects, consultants and advisors engaged by Hilton in connection with the Denizen Hotels Brand) who received actual notice of the Preliminary Injunction by personal service or otherwise from, among other things, knowingly using directly or indirectly in any way Starwood Information, including without limitation any information contained therein or derived therefrom;

**WHEREAS**, the Preliminary Injunction also, *inter alia*, required Hilton to return to Starwood any and all Starwood Information in its possession, custody, or control, wherever located;

**WHEREAS**, pursuant to the Preliminary Injunction, Hilton has delivered to Starwood over one hundred thousand hard copy and electronic documents (including duplicates), some or all of which constitute Starwood Information, and Hilton continues to find within its possession, custody or control, hard copy and electronic documents which may constitute Starwood Information, and Hilton is continuing to return such documents to Starwood;

**WHEREAS**, on July 22, 2009, the United States District Court for the Southern District of New York ordered that the Preliminary Injunction shall, in its entirety, remain in full force and effect for the duration of the Starwood Action;

**WHEREAS**, on January 14, 2010, Starwood filed an Amended and Supplemental Complaint in the Starwood Action (the "Amended Complaint");

**WHEREAS**, Hilton, Klein and Lalvani, as set forth in their respective Answers, deny the allegations in the Amended Complaint and deny that Starwood is entitled to the relief sought in the Starwood Action;

**WHEREAS**, the Parties have agreed to resolve all disputes between them amicably and in accordance with the terms and conditions of the separate, written Settlement Agreement between the Parties dated December 21, 2010 (the "Settlement Agreement");

**WHEREAS**, nothing herein shall be deemed an admission by any Party as to liability, non-liability, wrongdoing or the truth of any of Starwood's allegations, nor a waiver by any Party of its or his constitutional rights;

**WHEREAS**, the Settlement Agreement provides, among other things, for entry of this Consent Permanent Injunction, and the Court finds that the terms, conditions and remedies set forth in the Settlement Agreement and imposed by the Permanent Injunction, are reasonable, narrowly tailored, and of reasonable duration to preserve overall competition in the marketplace;

AND WHEREAS this Court, upon review of the entire record, including the Amended Complaint, the Settlement Agreement, the consent and stipulations of the Parties, and such other and further evidence, upon good cause shown:

**IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

(a) The Joint Motion is hereby granted, and this Consent Permanent Injunction (hereafter, the "Permanent Injunction") shall supersede and replace the Preliminary Injunction. Based upon the request and consent of the Parties, and the criteria set forth more fully below, the Court hereby orders: (1) the appointment of an independent monitor (to be selected in accordance with the terms and conditions of the Settlement Agreement) to ensure compliance with the portions of the Permanent Injunction enumerated in Sections (b), (c), (e), (f) (g), (j), (k) and (l) below (the "Injunction Monitor"), and (2) the appointment of an independent monitor (to be selected in accordance with the terms and conditions of the Settlement Agreement) to ensure Hilton's compliance with the portions of the Permanent Injunction enumerated in Sections (d), (h) and (i) below, and to ensure that Hilton does not in any way use Starwood Information or information or documents derived in whole or in part therefrom (the "Branding/Marketing Monitor"). The Parties shall cooperate with the Injunction Monitor and the Branding/Marketing Monitor (together, the "Monitors"), as provided for in the Settlement Agreement. The Monitors shall be governed by, and act in accordance with this Permanent Injunction, as set forth herein, and in accordance with the additional terms and conditions of the Settlement Agreement. The respective terms of the Monitors shall begin upon appointment by the Court and shall continue until January 1, 2013, unless further extended by the Court.

(b) Hilton, Klein and Lalvani and their respective subsidiaries, directors, officers, employees, agents, servants, representatives and attorneys, and all persons who contract to provide services to the Hilton Luxury & Lifestyle Brands Group[4] (including without limitation designers, architects, consultants, advisors and other vendors engaged by Hilton) who receive actual notice of the Permanent Injunction by personal service or otherwise, shall, to the extent it has not already been done and subject to Section (m) hereof, immediately deliver to Starwood's undersigned counsel all Starwood Information in their possession, custody or control, and Hilton or Starwood shall provide a copy thereof to the Injunction Monitor. Excluded from this provision is Starwood Information in the possession, custody or control of Blackstone[5] or non-parties pursuant to contractual agreements of confidentiality with Starwood, so long as Blackstone and such non-parties are in full compliance with all such confidentiality agreements.

(c) Hilton, Klein and Lalvani, and their respective subsidiaries, directors, officers, employees, agents, servants, representatives and attorneys, and all

---

[4] For purposes of this Order, "Hilton Luxury & Lifestyle Brands Group" means the division or divisions or other working groups within Hilton focused on the Hilton Luxury & Lifestyle Brands.

[5] For purposes of this Order, "Blackstone" means The Blackstone Group L.P., its parents, affiliates, subsidiaries, funds, portfolio companies and other assets.

other persons who contract to provide services to the Hilton Luxury & Lifestyle Brands Group (including, without limitation, designers, architects, consultants, advisors and other vendors engaged by Hilton) who receive actual notice of the Permanent Injunction by personal service or otherwise, shall be permanently enjoined from directly or indirectly using or distributing in any way any Starwood Information, and any information or documents derived in whole or in part from any Starwood Information, except for in connection with the Grand Jury Investigation and any related proceedings as set forth in Section (m) hereof. Excluded from this provision is Starwood Information in the possession, custody or control of Blackstone or non-parties pursuant to contractual agreements of confidentiality with Starwood, so long as they are in full compliance with all such confidentiality agreements. Except as set forth in Section (l) hereof, this paragraph shall not be construed to preclude Klein or Lalvani from being employed in the hotel industry.

(d)     If at any time prior to January 1, 2013, Hilton, or any of its subsidiaries, directors, officers, employees, agents, servants, representatives, or attorneys, find information or documents that a reasonable person would think may be Starwood Information or information or documents derived in whole or in part from Starwood Information (excluding any information restricted by Hilton's Counsel pursuant to Section (m) hereof) (collectively, "Suspected Starwood Information"), said Suspected Starwood Information shall immediately be provided to the Branding/Marketing Monitor with written notice thereof provided simultaneously to Starwood's undersigned counsel, and Hilton shall immediately inform both Monitors and Starwood in writing of the circumstances under which the Suspected Starwood Information was found and any use that Hilton had made or was proposing to make of it. Until such time as the Branding/Marketing Monitor decides whether or not the Suspected Starwood Information is Starwood Information or is information or documents derived in whole or in part, directly or indirectly, from Starwood Information, Hilton shall not in any way use or disseminate the Suspected Starwood Information. Subject to their rights to seek review by the Court, Hilton and Starwood shall abide the decision of the Monitors in respect of any further use of the Suspected Starwood Information. If the Branding/Marketing Monitor determines that the Suspected Starwood Information is Starwood Information or is information or documents derived in whole or in part, directly or indirectly, from Starwood Information, Hilton shall immediately deliver it, including any copies or materials derived therefrom, to the Branding/Marketing Monitor who shall return it to Starwood or certify its destruction, as appropriate.

(e)     Within thirty (30) days after entry of the Permanent Injunction, Hilton shall give actual written notice of the Permanent Injunction to all Blackstone employees with responsibility for Hilton or Hilton hotels, all Hilton directors, officers, in-house attorneys and other Hilton Employees,[6] and all persons who contracted to provide services to the Hilton Luxury & Lifestyle Brands Group at any time between May 1,

---

[6]     For purposes of this Order, "Hilton Employee" means any person employed by Hilton or any of its subsidiaries: (i) in a corporate, divisional or regional function or office, excluding employees in low-level support or administrative positions; or (ii) as a general manager at a Hilton Luxury & Lifestyle Brand hotel that is owned, operated, franchised, licensed or managed by Hilton or any of its subsidiaries.

2008 and the Effective Date[7] (including without limitation designers, architects, consultants, advisors and other vendors engaged by Hilton), by providing a complete copy of the Permanent Injunction to each such person. Hilton shall provide to the Injunction Monitor, in writing, a listing of the names and email addresses of all Hilton employees and the names and addresses of each other person and/or business to whom actual notice of the Permanent Injunction has been provided a complete copy of which shall be simultaneously provided to Starwood's undersigned counsel for counsel's eyes only.

(f) For the duration of the Permanent Injunction, Hilton shall provide all of its directors and officers and all persons who are hired as Hilton Employees with actual written notice of the Permanent Injunction, and, during the term of the Injunction Monitor, Hilton shall deliver proof thereof contemporaneously to the Injunction Monitor.

(g) Until January 1, 2013, Hilton shall not, directly or indirectly, have any Substantive Business Communications[8] concerning the Monitored Properties/Hotels,[9] and shall not, directly or indirectly, enter into any agreements or business relationships with respect to (i) any of the Monitored Properties/Hotels, or (ii) any property/hotel neighboring a Monitored Property/Hotel that is owned or controlled by the owner/developer of such Monitored Property/Hotel and that would directly compete for the same hotel guests as the Monitored Property/Hotel. To the extent that, prior to the entry of the Permanent Injunction, Hilton has had any Substantive Business Communications with respect to any property or hotel contemplated in the preceding sentence, such Substantive Business Communications shall immediately cease, and no agreements of any kind with respect to any of the Monitored Properties/Hotels shall be made. Until January 1, 2013, Hilton and Hilton Employees shall not be involved in discussions regarding an acquisition of any hotels, hotel companies or hotel chains, which acquisition would include a Monitored Property/Hotel, and in the event such an acquisition occurs, any property/hotel covered by the prohibition of this paragraph shall

---

[7] For purposes of this Order, "Effective Date" means the date by which all of the following have occurred: (i) the complete execution of the Settlement Agreement by all Parties thereto, (ii) entry by the Court of this Permanent Injunction, (iii) the Court's appointment of the Injunction Monitor; (iv) the Court's appointment of the Branding/Marketing Monitor, and (v) Starwood's receipt of all payments required by Section 6.1 of the Settlement Agreement.

[8] For purposes of this Order, "Substantive Business Communications" means a communication (whether oral, written, electronic or otherwise) with an owner/developer, including without limitation a letter of intent, project approval request, property improvement plan, pitch presentation, or response to a request for proposals, at a stage where such communication has focused on one or more particular hotels, properties, or sites and which relates to a possible contractual relationship. For the avoidance of doubt, initial conversations with an owner/developer at an industry conference and other similar preliminary discussions would not constitute Substantive Business Communications. Excluded from the definition of Substantive Business Communications shall be communications limited to Hampton, Hilton Garden Inn, Home 2 Suites by Hilton, Homewood by Hilton, Embassy Suites, or Doubletree hotels.

[9] For purposes of this Order, "Monitored Properties/Hotels" means the specific properties and hotels identified by owner/developer and location (including street address, city, state/province and country) listed on Exhibit B to the Settlement Agreement, as may be modified pursuant to the addendum to Exhibit B to the Settlement Agreement, all of which shall remain confidential.

not become a Hilton Brand Hotel at any time prior to January 1, 2013. Until January 1, 2013, Hilton shall not, directly or indirectly, acquire, manage, own, franchise or operate any Starwood Lifestyle Brand[11] hotel currently owned, operated or licensed by Starwood; provided that the prohibition in this sentence shall not apply to any hotel as to which the Starwood contract has been terminated (or as to which the owner/developer has given notice of a determination to terminate) in accordance with the terms of such contract (including, but not limited to, terminations on sale, terminations based on performance criteria, and contracts that have run full term and not been renewed), provided in each case the termination was not solicited, assisted or induced, directly or indirectly, by Hilton or Blackstone.

(h)     Within ninety (90) days following the commencement of the Branding/Marketing Monitor's term, Hilton shall have all Eligible Documents[11] that are in use on and/or after the date of execution of the Settlement Agreement reviewed by the Branding/Marketing Monitor to assure that they are not derived, directly or indirectly, in whole or in part, from Starwood Information, and Hilton will immediately cease using any such materials should the Branding/Marketing Monitor determine that such use would violate the Permanent Injunction. The Branding/Marketing Monitor shall preserve copies of all materials the use of which it has found would violate the Permanent Injunction.

(i)     Until January 1, 2013, Hilton shall provide copies of any Eligible Documents that are created to be used on and/or after the Effective Date to the Branding/Marketing Monitor for review (before, or no later than the same day as, Hilton's dissemination or use of such documents) to assure that they are not derived, directly or indirectly, in whole or in part, from Starwood Information, and Hilton will not use any such materials should the Branding/Marketing Monitor determine that such use would violate the Permanent Injunction and will immediately recall any such materials that may already have been disseminated. The Branding/Marketing Monitor may, in his/her discretion, impose additional remedies to address violations of the Permanent Injunction. In the event that the Branding/Marketing Monitor finds a knowing and material violation of the Permanent Injunction, effective immediately upon such finding and continuing until January 1, 2013, Hilton shall be required to submit all Eligible Documents to the Branding/Marketing Monitor for approval for dissemination and use *before* any dissemination or use thereof outside of Hilton. The Branding/Marketing

---

[10]  For purposes of this Order, "Starwood Lifestyle Brands" means W Hotels and any other lifestyle brand that is developed by or on behalf of Starwood now or in the future, including without limitation residential projects and vacation resorts.

[11]  For purposes of this Order, "Eligible Documents" means the following types of documents, including, without limitation, electronic information, that are created to be disseminated to property owners, general managers, or the public in connection with the development, branding, promotion, or marketing of Hilton Luxury & Lifestyle Brands: property improvement plans, project approval requests, management agreements, license agreements, franchise agreements, timelines, milestones, critical paths, facilities programs, marketing calendars, brand standards, residential standards, openings checklists, web site designs, branding or marketing materials, strategic plans, and similar documents.

Monitor shall preserve copies of all materials the use of which it has found would violate the Permanent Injunction.

(j) Until January 1, 2013, Hilton shall be enjoined from hiring any Starwood Employee[12] to be employed within or above the Hilton Luxury & Lifestyle Brands Group or in any marketing, management or executive level position at a Hilton Luxury & Lifestyle Brand hotel.

(k) Until January 1, 2013, (i) Hilton shall be enjoined from introducing or launching, directly or indirectly, any hotel brand that would (x) occupy the same or substantially similar space as was intended to be occupied by the Denizen Hotels Brand, or (y) compete in the lifestyle hotel or branded boutique space as those terms are commonly understood in the hotel industry, and (ii) Hilton and Hilton Employees shall not be involved in any discussions or negotiations regarding an acquisition of or merger with a hotel company or an acquisition of hotels or a hotel chain in the lifestyle hotel or branded boutique space and no such acquired company, brand or chain in the lifestyle hotel or branded boutique space may become a Hilton Brand Hotel[13] prior to January 1, 2013. Notwithstanding the foregoing, the prohibitions of this subparagraph shall not apply to, and nothing herein shall be construed to (i) prohibit Hilton's business combination with a hotel company acquired by Blackstone prior to January 1, 2013 which is valued at more than $5 billion (measured by total enterprise value), including the assumption of debt, and as to which luxury and lifestyle comprises less than 20% of such company's business, measured by keys (*i.e.*, rooms), (ii) prohibit Hilton from introducing or launching a collection or grouping of independent hotels provided that such collection or grouping does not compete primarily in the lifestyle hotel or branded boutique space, or (iii) prohibit Hilton from taking any action, including without limitation expanding, repositioning or rebranding, with respect to Hilton Brand Hotels, provided that such action does not constitute a fundamental repositioning of a Hilton Brand Hotel into the lifestyle hotel or branded boutique space. Further, if after January 1, 2013, Hilton introduces a lifestyle brand or branded boutique hotel that has one or more elements in common with those contemplated for the Denizen Hotels Brand (except for the Denizen name), that shall not be considered a violation of Section 2.3 of the Settlement Agreement.

(l) Until January 1, 2013, Klein and Lalvani shall not work for (*i.e.*, be employed by or enter into a relationship tantamount to employment with) any hotel or group listed on Exhibit F to the Settlement Agreement, which shall remain confidential;

---

[12] For purposes of this Order, "Starwood Employee" means any person employed by Starwood or any of its subsidiaries or affiliates at any time since June 1, 2008, in: (i) a corporate, divisional or regional function or office, excluding employees in low-level support or administrative positions; or (ii) any marketing, management or executive level position at a Starwood Brand Hotel.

[13] For purposes of this Order, "Hilton Brand Hotels" means Hilton Hotels & Resorts, Conrad Hotels & Resorts, Denizen, Doubletree, Embassy Suites Hotels, Hampton Inn Hotels and Suites, Hilton Garden Inn, Hilton Grand Vacations, Homewood Suites by Hilton, Home 2 Suites by Hilton, Waldorf Astoria Hotels & Resorts, Waldorf Astoria Collection, and all other hotels owned, operated, franchised, leased, licensed or managed by Hilton or any of its subsidiaries now and in the future.

provided, however, that to the extent that an employer of Klein or Lalvani merges with, is acquired by, or acquires, a hotel or hotel group listed on Exhibit F to the Settlement Agreement, this provision shall not require that Klein or Lalvani terminate such employment.

(m) Nothing herein shall be construed to (i) require any Party to destroy documents that it is under an obligation to preserve pursuant to the Grand Jury Investigation, applicable law or other legal requirement, or (ii) prohibit the use of documents in connection with the Grand Jury Investigation and proceedings relating thereto. However, as to Hilton, any documents preserved for that purpose shall be segregated from Hilton's business files, removed from Hilton's premises and access to such documents shall be strictly limited by Hilton's undersigned counsel, and as to Klein and Lalvani all such documents shall be maintained solely in the possession of his respective undersigned counsel (or experts or consultants who have executed appropriate confidentiality agreements) as provided in the Protective Order entered in this Action. Within 45 days after the end of the Grand Jury Investigation or proceedings related thereto, Hilton, Klein and Lalvani and their respective counsel shall use best reasonable efforts to retrieve all Starwood Information from all persons with whom they may have shared Starwood Information pursuant to a common interest or privileged relationship, and counsel for Hilton, Klein and Lalvani shall provide a written certification to Starwood's counsel confirming that such efforts have been made and that all retrieved Starwood Information shall be securely maintained in the custody of that counsel (or their agents). Within thirteen months after the later of dismissal of the Starwood Action with prejudice and the end of the Grand Jury Investigation or proceedings related thereto, Hilton, Klein, and Lalvani shall certify in writing to Starwood's Counsel that they have made reasonable efforts to destroy all Starwood Information in their possession, custody or control. Starwood's counsel shall, for six years following the Effective Date, maintain a copy set of all Starwood Information forwarded to it by the Parties during the pendency of the Starwood Action and the term of the Settlement Agreement.

(n) Sections (b), (c) and (f) above shall be permanent and Hilton, Klein or Lalvani shall not seek to amend, modify or vacate the Permanent Injunction in any way without the express written consent of Starwood at any time within seven (7) years from the date of its entry. Starwood may withhold such consent for any reason or no reason within its sole and unrestricted discretion, it being the intention of the parties that the Permanent Injunction remain in full force and effect for a minimum of at least seven (7) years.

**IT IS FURTHER HEREBY STIPULATED, AGREED, AND ORDERED, THAT:**

(o) The Injunction Monitor's term shall begin immediately upon appointment by the Court and continue until January 1, 2013, unless further extended by the Court. If the Injunction Monitor cannot serve the full term, the same selection and appointment process described in the Settlement Agreement shall be repeated and the term of the monitorship shall be extended by the time for which there was no Injunction Monitor. The Court shall have continuing jurisdiction to enforce and extend the term of

the Injunction Monitor, and to take such other actions as may be necessary and appropriate to effectuate its purpose, including replacement of the Injunction Monitor for good cause shown. The Injunction Monitor's role is to ensure Hilton's, Klein's and Lalvani's compliance with Article 2 of the Settlement Agreement and the portions of the Permanent Injunction enumerated in Sections (b), (c), (e), (f), (g), (j), (k) and (l) set forth above. Hilton, Klein and Lalvani shall cooperate with the Injunction Monitor (Klein's and Lalvani's cooperation is limited to provision of the affidavits as set forth in Section (ii) hereof). In aid of its role, for the duration of the Injunction Monitor's term, subject to the rights of third parties as to confidentiality and personal privacy, the Injunction Monitor shall: (i) have access to copies of the Starwood Information returned to Starwood by Hilton, Klein or Lalvani; (ii) upon reasonable notice, have the right to inspect documents, electronic files and computer systems of Hilton as is reasonably necessary to ascertain Hilton's compliance with the Injunctions and to require periodically that Klein and/or Lalvani provide sworn affidavits certifying he is in full compliance with the Permanent Injunction; (iii) upon reasonable notice, have the right to interview employees of Hilton regarding the subject matters covered by the Injunctions as is reasonably necessary to ascertain Hilton's compliance with the Injunctions; (iv) upon reasonable notice, have access to other information from Hilton as the Injunction Monitor may reasonably believe necessary to perform its duties; (v) execute appropriate confidentiality agreements before being granted access to confidential, proprietary and/or trade secret information; and (vi) engage or hire staff or consultants reasonably necessary to assist in carrying out the Injunction Monitor's duties.

    (p) In connection with its role as described above, the Injunction Monitor shall perform the following tasks which, to the greatest extent reasonably practicable, shall not overlap with or duplicate the tasks of the Branding/Marketing Monitor: (i) ensure, in consultation with Hilton and Hilton's undersigned counsel and Starwood and Starwood's undersigned counsel, as appropriate, that sufficient steps have been taken to identify Starwood Information and any use that Hilton has made of Starwood Information or information and documents derived in whole or in part therefrom; (ii) verify that identified Starwood Information and information derived in whole or in part from Starwood Information are removed, blocked or access is otherwise terminated as to the files and computer systems of Hilton and that such information is no longer accessible to Hilton employees; (iii) confirm the reasonableness and thoroughness of the search conducted by Hilton's undersigned counsel, and the accuracy of the representation and warranty made by Hilton, in Sections 2.3-2.4 of the Settlement Agreement; (iv) confirm that Hilton has given actual notice of the Permanent Injunction as required herein; (v) review the employment histories of newly hired employees within the Hilton Luxury & Lifestyle Brands Group or in any marketing, management or executive level position at a Hilton Luxury & Lifestyle Brand hotel to confirm that they are not Starwood Employees, and direct Hilton to take such actions as are believed necessary and appropriate to assure compliance with Section (j) hereof; (vi) review in advance the names and locations of any owners, developers, properties and hotels with respect to which Hilton wishes to have Substantive Business Communications prior to the occurrence of any such Substantive Business Communication and determine promptly whether the properties and/or hotels at issue are listed on Exhibit B to the Settlement Agreement, to assure compliance with Section (g) hereof; (vii) at least once every ninety

(90) days, issue a confidential written report to the Court, a full and complete copy of which will simultaneously be provided to Hilton and Starwood, regarding Hilton's compliance with the portions of the Permanent Injunction subject to monitoring by the Injunction Monitor, recommending such actions, if any, the Injunction Monitor deems necessary to bring Hilton into compliance and/or assure continued compliance with the Permanent Injunction; provided that such report shall not contain any confidential, proprietary and/or trade secret information belonging to Hilton or Starwood and shall not be made available to the public; and (viii) recommend to the Court such other tasks and actions as the Injunction Monitor shall believe are prudent to assure Hilton's compliance with the Permanent Injunction. Hilton shall pay all costs of the Injunction Monitor including without limitation payment of the Injunction Monitor's reasonable fees and expenses, as well as the reasonable fees and expenses of any employees or consultants hired or engaged by the Injunction Monitor for these purposes, provided that such costs are to be reasonable in the circumstances. The reasonableness of all such costs shall be subject to the Court's review, on application by Hilton, with notice to Starwood.

(q) The Branding/Marketing Monitor's term shall begin immediately upon appointment by the Court and continue until January 1, 2013, unless further extended by the Court. If the Branding/Marketing Monitor cannot serve the full term, the same selection and appointment process described in the Settlement Agreement shall be repeated and the term of the monitorship shall be extended by the time for which there was no Branding/Marketing Monitor. The Court shall have continuing jurisdiction to enforce and extend the terms of the Branding/Marketing Monitor, and to take such other actions as may be necessary and appropriate to effectuate its purpose, including replacement of the Branding/Marketing Monitor for good cause shown. The Branding/Marketing Monitor's role is to ensure that there is no use, directly or indirectly, by Hilton of any Starwood Information or information derived in whole or in part therefrom, and Hilton's compliance with the portions of the Permanent Injunction enumerated in Section (d), (h) and (i) set forth above. Hilton shall cooperate with the Branding/Marketing Monitor as provided herein. In aid of its role, for the duration of the Branding/Marketing Monitor's term, subject to the rights of third parties as to confidentiality and personal privacy, the Branding/Marketing Monitor shall: (i) have access to copies of the Starwood Information returned to Starwood by Hilton, Klein or Lalvani; (ii) upon reasonable notice, have the right to inspect Hilton documents, electronic files and computer systems related to Hilton Luxury & Lifestyle Brands; (iii) upon reasonable notice, have the right to interview employees of Hilton regarding Hilton Luxury & Lifestyle Brands; (iv) upon reasonable notice, have access to other information as the Branding/Marketing Monitor may reasonably believe necessary to perform its duties; (v) execute appropriate confidentiality agreements before being granted access to confidential, proprietary and/or trade secret information and keep confidential any information covered by such an agreement; and (vi) engage or hire staff or consultants reasonably necessary to assist in carrying out the Branding/Marketing Monitor's duties.

(r) In connection with its role as described above, the Branding/Marketing Monitor shall perform the following tasks which, to the greatest extent reasonably practicable, shall not overlap with or duplicate the tasks of the Injunction Monitor: (i) examine Suspected Starwood Information (including any

metadata, if applicable) to determine whether Suspected Starwood Information is Starwood Information, or was derived, directly or indirectly, in whole or in part, from Starwood Information, and direct Hilton to take such actions as are believed necessary and appropriate to assure compliance with Section (d) hereof; (ii) consistent with Section (i) hereof, examine Eligible Documents currently in use or to be used by Hilton in the future in connection with Hilton Luxury & Lifestyle Brands and their provenance to confirm that there is and will in the future be no use, directly or indirectly, of any Starwood Information, and, in the event that the Branding/Marketing Monitor determines that an Eligible Document disseminated after the Effective Date violates the Permanent Injunction, in addition to Hilton's immediate recall of such document, the Branding/Marketing Monitor may, in his/her discretion, impose additional remedies to address the violation (in addition to the process for approval by the Branding/Marketing Monitor prior to dissemination, as required by Section (i) hereof); (iii) at least once every ninety (90) days, issue a confidential written report to the Court, a full and complete copy of which will simultaneously be provided to Hilton and Starwood, regarding Hilton's compliance with the portions of the Permanent Injunction subject to monitoring by the Branding/Marketing Monitor, recommending such actions, if any, as the Branding/Marketing Monitor deems necessary to bring Hilton into compliance and/or assure continued compliance with the Permanent Injunction; provided that the report shall not contain any confidential, proprietary and/or trade secret information belonging to Hilton or Starwood and shall not be made available to the public; and (iv) recommend to the Court such other tasks and actions as the Branding/Marketing Monitor shall believe are prudent to assure compliance with the Permanent Injunction. Hilton shall pay all costs of the Branding/Marketing Monitor including without limitation payment of the Branding/Marketing Monitor's reasonable fees and expenses, as well as the reasonable fees and expenses of any employees or consultants hired or engaged by the Branding/Marketing Monitor for these purposes, provided that such costs are to be reasonable in the circumstances. The reasonableness of all such costs shall be subject to the Court's review, on application by Hilton, with notice to Starwood.

(s) The Court shall have continuing jurisdiction to enforce and extend the term of the Permanent Injunction and the Monitors, and to take such other actions as may be necessary and appropriate to remedy its breach and to effectuate its purpose. The Court retains the power to enforce and extend the duration of all injunctive relief, including, without limitation, the Monitors and all monitorships referenced herein, if Hilton, Klein or Lalvani violate the injunctive relief set forth herein. The Court shall retain jurisdiction over the Starwood Action and the Settlement Agreement and its terms. Any and all disputes or controversies arising under, related to, or in connection with the Settlement Agreement shall be submitted only to this Court and the Court shall have exclusive jurisdiction over all such disputes or controversies.

(t) Upon the Joint Request of Starwood, Hilton, Klein and Lalvani, the Court shall place the Starwood Action on the Court's Suspense Calendar where it will remain stayed subject to the continuing jurisdiction of the Court so long as Hilton, Klein and Lalvani remain in material compliance with the Permanent Injunction and until Starwood's receipt of the applicable payments set forth in the Settlement Agreement and the completion of all services by both the Injunction Monitor and the Branding/Marketing

Monitor. The Court shall maintain jurisdiction over any claims for violation of the Permanent Injunction and/or breach of any of the applicable representations and warranties contained in the Settlement Agreement. If all payments required by the Settlement Agreement have been made or satisfied in full, at the completion of all services by the Monitors, the Starwood Action shall be promptly dismissed with prejudice as to any and all parties who are in material compliance with the Permanent Injunction, pursuant to a Stipulation and Proposed Order in the form attached to the Settlement Agreement as Exhibit C.

(u) This Order and Permanent Injunction shall become effective immediately upon its entry.

SO ORDERED THIS 22nd DAY OF DECEMBER ___, 2010

_____
United States District Judge